UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN D. GATES,<br><br>            Plaintiff,<br><br>       v.<br><br>S. SERGENT, et al.,<br><br>            Defendants. | No. 2:22-cv-01576 DAD CSK P<br><br><br>FINDINGS & RECOMMENDATIONS |

## I. INTRODUCTION

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983.[1] Pending before the Court is defendants' summary judgment motion. (ECF No. 44.) For the following reasons, this Court recommends that defendants' summary judgment motion be denied.

## II.     LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] In the opposition, plaintiff identifies herself as a transgender woman, generally using "she" and "her" pronouns. (ECF No. 55.) Accordingly, in these findings and recommendations, this Court refers to plaintiff as "she" and "her."

1

judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). A verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The evidence of the opposing party is to be believed. See Anderson v. Liberty Lobby, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed on April 20, 2023, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 32 (citing

3

Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).).

## III. BACKGROUND

### A. Background Re: Summary Judgment Motion

On August 27, 2024, defendants filed their summary judgment motion. (ECF No. 44.) On September 25, 2024, after plaintiff failed to file an opposition, this Court granted plaintiff thirty days to file an opposition. (ECF No. 46.) Thirty days passed and plaintiff did not file an opposition. On November 4, 2024, this Court recommended that this action be dismissed for plaintiff's failure to prosecute. (ECF No. 47.) On November 15, 2024, plaintiff filed a motion for a ninety-day extension of time to file her opposition or to file discovery motions. (ECF No. 48.) On November 21, 2024, this Court vacated the November 4, 2024 findings and recommendations, denied plaintiff's request to conduct discovery and granted plaintiff thirty days to file her opposition to defendants' summary judgment motion. (ECF No. 49.) Thirty days passed and plaintiff did not file her opposition. On January 6, 2025, this Court recommended that this action be dismissed for plaintiff's failure to prosecute. (ECF No. 50.) Plaintiff did not file objections. On February 20, 2025, District Judge Dale A. Drozd adopted the January 6, 2025 findings and recommendations and judgment was entered. (ECF Nos. 51, 52.)

On April 11, 2025, plaintiff filed a motion for an extension of time to file her opposition to defendants' summary judgment motion. (ECF No. 53.) On April 21, 2025, District Judge Dale A. Drozd construed plaintiff's April 11, 2025 motion as a request for relief from judgment. (ECF No. 54.) District Judge Dale A. Drozd reopened this action and granted plaintiff until June 30, 2025 to file her opposition to defendants' summary judgment motion. (Id.) Plaintiff filed her opposition on April 21, 2025. (ECF No. 55.) Defendants filed a reply on May 19, 2025. (ECF No. 59.)

### B. Plaintiff's Claims

This action proceeds on plaintiff's verified complaint filed September 8, 2022 as to claim one against defendants Sergent, Baliton, Reynolds, Culum and Gann.[2] (ECF No. 1.) The alleged

---

[2] On September 27, 2022, the Court dismissed claims two and three raised in the complaint with leave to amend. (ECF No. 6). On October 21, 2022, plaintiff voluntarily dismissed claims two

4

deprivations occurred at Mule Creek State Prison ("MCSP"). (Id. at 1.) Plaintiff alleges that on September 5, 2022, defendants Sergent, Baliton, Culum and Gann used excessive force against plaintiff in violation of the Eighth Amendment. (Id. at 5.) Plaintiff alleges that defendant Reynolds failed to intervene during the excessive force. (Id.)

In particular, plaintiff allege that on September 5, 2020, plaintiff notified Officer Gallegos that plaintiff was having safety concerns with plaintiff's cellmate. (Id.) Plaintiff's cellmate threatened plaintiff's safety because plaintiff is transgender/non-binary. (Id.) Defendants Culum and Baliton then threw plaintiff into a wheelchair with the intention of throwing plaintiff back into the cell with the inmate who threatened plaintiff's safety. (Id.) Plaintiff's ankles were shackled to the wheelchair. (Id.) After plaintiff refused to exit the wheelchair upon arriving at her cell, defendants Culum and Baliton snatched plaintiff out of the wheelchair, dragged plaintiff to the cell and threw plaintiff into the steel door frame, which injured plaintiff's right shoulder. (Id.) After plaintiff fell to the ground, defendant Culum began kicking and stomping on plaintiff's legs. (Id.) Plaintiff began crying and screaming and requested to speak to a supervisor. (Id.) Plaintiff stated that she could not go into the cell because her life was in danger. (Id.) During defendant Culum's attack on plaintiff, defendant Gann began slamming the door on plaintiff's right knee and defendant Sergent stomped on plaintiff's right ankle repeatedly. (Id.) During this assault, defendant Reynolds stood by and watched. (Id. at 6.)

Plaintiff describes her injuries as pain and swelling in her face, scrapes and swelling in her right knee, an open wound in her right ankle and a bruised and swollen shoulder. (Id. at 5.)

This action proceeds on the following claims alleging excessive force in violation of the Eighth Amendment: 1) defendants Culum and Baliton threw plaintiff in the cell; 2) defendants Culum and Sergent kicked plaintiff; and 3) defendant Gann slammed the door on plaintiff.

**IV. DEFENDANT REYNOLDS**

Plaintiff alleges that defendant Reynolds observed the alleged excessive force and failed to intercede. "Officers can be held liable for failing to intercede in situations where excessive

---

and three. (ECF No. 10.)

5

force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" Hughes v. Rodriguez, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000)). Because Defendants' summary judgment motion does not address plaintiff's failure to intercede claim against defendant Reynolds, this Court does not address plaintiff's failure to intercede claim against defendant Reynolds.

**V. DEFENDANTS' SUMMARY JUDGMENT MOTION**

Defendants move for summary judgment on the merits of plaintiff's Eighth Amendment excessive force claims against defendants Culum, Baliton, Sergent and Gann and also based on qualified immunity as to these claims. This Court first addresses defendants' motion for summary judgment on the merits of plaintiff's Eighth Amendment excessive force claims, then turns to defendants' qualified immunity arguments.

**A. Eighth Amendment Claims**

1. Legal Standards

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Ninth Circuit identified five factors set forth in Hudson to be considered in determining whether force was applied in a good faith effort to restore harm or maliciously and sadistically to cause harm: (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. See Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). "The application of the Hudson factors to this case is determinative of whether the force applied to [plaintiff] was wanton and unnecessary." Id. at 1029.

///

### 2. Defendants' Position

Defendants argue that they did not use excessive force against plaintiff. Defendants contend that plaintiff was required to be secured within an approved cell, and yet continued to refuse lawful orders to comply. Defs. Mem. at 7 (ECF No. 44 at 7) (citing Defs. undisputed facts nos. 1-6, 12-22). Defendants contend that plaintiff failed to justify any basis for the refusal. Defs. Mem. at 8. Defendants argue that plaintiff did not make a formal representation of enemy concerns and plaintiff's cellmate did not pose an immediate threat of harm. Defs. Mem. at 8 (citing Defs. undisputed facts nos. 8-9). Defendants contend that despite plaintiff's claimed suicidal ideation, plaintiff had been cleared by the appropriate medical personnel to return to her cell. Defs. Mem. at 8 (citing Defs. undisputed facts nos. 10-11). Defendants contend that defendants were authorized to use force to overcome resistance and gain compliance with their lawful orders. Defs. Mem. at 8 (citing Defs. undisputed facts nos. 14 and 18). Defendants contend that even accepting plaintiff's disputed testimony as true, defendants used only necessary and reasonable force under the circumstances to overcome plaintiff's admitted resistance, and to gain plaintiff's compliance with defendants' lawful orders. Defs. Mem. at 8 (citing Defs. undisputed facts nos. 15, 17-29). Defendants contend that there is simply no dispute that any defendant used excessive force for any reason other than to secure plaintiff into her cell. Defs. Mem. at 8 (citing Defs. undisputed facts nos. 17-29). Defendants contend that once it became clear that plaintiff would not enter her cell without violent resistance, defendants placed plaintiff in cuffs and brought plaintiff to Administrative Segregation to await discipline. Defs. Mem. at 8 (citing Defs. undisputed facts nos. 29-31).

### 3. Plaintiff's Position

In her verified opposition, plaintiff argues that she refused to enter her cell after reporting a threat to her safety. (ECF No. 55 at 2.) Plaintiff contends that plaintiff is nonbinary/transgender and had reported not feeling safe with her cellmate. (Id.) Plaintiff contends that defendants disregarded policy and used force to make plaintiff live with someone whom she reported having safety concerns. (Id.) Plaintiff contends she reported "concerns due to her sexual orientation and advancements and comments her cellmate made. The sexual

7

1  harassment and threats of being assaulted if plaintiff refused her cellmate's advances." (Id.)
2  Plaintiff contends that when she was interviewed, she alerted MCSP/ California Department of
3  Corrections and Rehabilitation ("CDCR") staff that she was in danger for her life and that her
4  cellmate had threatened her and sexually harassed her. (Id.) Plaintiff contends that the policy is
5  when an inmate refuses specific housing or reports safety concerns, staff must either make a
6  cautionary move or place the refusing inmate in administrative segregation until an investigation
7  can be completed. (Id.) In support of this claim, plaintiff cites the CDCR Department Operations
8  Manual ("DOM") section 54046.11. Subsection (a) of section 54046.11 states,

> If an inmate refuses to be housed in an appropriately determined housing, they shall be subject to the disciplinary process, with the potential be housed in alternative and more restrictive housing. Refusal to participate will result in the issuance of a RVR for conduct, CCR subsection 3005(c), Refusing to Accept Assigned Housing, for the specific act of Willfully, Resisting, Delaying, or Obstructing any Peace Officer in the Performance of Duty (CCR subsection 3323(f)(6)), and shall be considered after the first RVR for placement in more restrictive housing such as an ASU or a SHU.

CDCR DOM § 54046.11(a).

15  Plaintiff contends that when defendants forced plaintiff into the cell, plaintiff's cellmate
16  and other inmates heard plaintiff's confidential report that plaintiff had just made regarding her
17  safety, which revealed plaintiff as a snitch. (Id.) Plaintiff contends that she was kicked and
18  slammed against the door. (Id.) Plaintiff contends that in resisting defendants' attempt to force
19  her into the cell, she did not get physical or violent with defendants. (Id. at 3.)

20  In her opposition, plaintiff describes the injuries she allegedly suffered as a result of the
21  incident as having her face smashed in and injuring her nose as a result of hitting the cell door,
22  bruises on her body for months, and pain for weeks as a result of being kicked in various places
23  and swollen knees. (Id. at 3, 5.) Plaintiff also states that she requested her medical file, c-file and
24  other documents from CDCR, but her requests were refused. (Id. at 5.)

25          4. Analysis

26  Defendants argue that they did not use any force against plaintiff. As discussed below,
27  whether defendants used any force on plaintiff are materially disputed facts. Accordingly,
28  defendants' motion for summary judgment on the grounds that they did not use any force against

8

plaintiff should be denied.

Defendants argue that accepting plaintiff's disputed testimony as true, defendants used only necessary and reasonable force under the circumstances. Defendants do not specifically cite or address the Hudson factors, including the first, fourth or fifth Hudson factors: extent of plaintiff's injury, threat reasonably perceived by defendants and efforts made to temper severity of forceful response. Based on defendants' argument, this Court finds that defendants' summary judgment motion is based on the second and third Hudson factors, i.e., the need for force and the relationship between that need and the force used.

*a. The Parties' Versions of Events*

Before discussing the second and third Hudson factors, this Court sets forth plaintiff's version of events, as contained in plaintiff's deposition testimony, and defendants' version of events, as contained in defendants' declarations.

At her deposition, plaintiff testified that after she was cleared by mental health, she was put in a holding cage. Pl. Dep. 20:13-20, June 27, 2023 (ECF No. 44-1 at 25). The acting sergeant ordered plaintiff to exit the holding cell and plaintiff refused. Id. at 21:3-6. Apparently on her own volition, plaintiff fell to the floor of the holding cell. Id. at 21:6-7. Defendants Culum and Baliton picked plaintiff up and put her in a wheelchair. Id. at 20:21-25-21:1-7, 23:8-11. When they arrived at plaintiff's building, defendants ordered plaintiff to get out of the wheelchair and walk to her cell. Id. at 30:15-18. Plaintiff refused. Id. at 30:19-22. Defendants Culum and Baliton dragged plaintiff to her cell. Id. at 31:3-4. When they arrived at plaintiff's cell, defendants Culum and Baliton attempted to throw plaintiff into her cell. Id. at 31:4-8. Plaintiff testified that defendant Culum "pretty much, like, lunged me forward, as a throw forward, and I hit the door, because defendant Baliton was a little bit off with his timing to release my left arm." Id. at 32:11-14. Defendant Baliton seemed surprised when defendant Culum began to throw plaintiff into the cell. Id. at 33:18-21. Plaintiff hit the cell door and fell to the floor. Id. at 32:18-20. Plaintiff's shoulder hit the doorframe. Id. at 34:8-13. Plaintiff could not recall defendants Culum and Baliton giving any commands when they threw plaintiff. Id. at 32:21-23. Defendants did not discuss how they would put plaintiff back in the cell. Id. at 33:22-24. After

9

plaintiff fell to the floor, defendants Culum and Sergent began kicking plaintiff. Id. at 35:2-7. Plaintiff refused to go in the cell and asked to see the sergeant. Id. at 35:10-12. Plaintiff blocked defendants from closing the cell door because half of her body was inside the cell. Id. at 35:24-25-36:1-2. When asked how defendant Culum kicked her, plaintiff testified,

> He pretty much was stomping me with, like, his heel, kind of, trying to kick my legs in. He's pretty much if—like, kicking like a soccer ball, you would use the front of your feet to kick, but he was more so using the back of his heel, bottom of his foot, to kick my legs in rather than using the toe of his foot.

Id. at 36:12-17.

Plaintiff testified that defendant Culum stomped on plaintiff in the leg area from the knee down more than five times. Id. at 36:18-22. As defendant Culum stomped on plaintiff he stated, "Take your fucking ass in the cell. Just move your fucking legs. Go in the fucking cell." Id. at 36:25-37:1-2. During defendant Culum's attack, defendant Gann began slamming the door on plaintiff's right knee. Id. at 44:11-25-46:15.

Plaintiff testified that while on the ground, she was refusing to go into the cell and she told defendants they were using excessive force and asked them to get the sergeant. Id. at 35:8-14. Plaintiff also testified that she began crying and screaming that she needed to speak to a supervisor, she could not go back in there and that her life was in danger. Id. at 37:5-9. In response to the request for a supervisor, a defendant said, "No, fuck that. He don't want shit to do with you. Just take your fucking ass in the cell." Id. at 38:6-8. Plaintiff then took her shirt off and tied it around her neck to try and cut off her breathing. Id. at 38:11-3. Defendant Sergent then bent down to talk to plaintiff. Id. at 43:21-22. Defendant Sergent told plaintiff to take the shirt away from her neck. Id. at 41:2-3. Plaintiff told defendant Sergent that plaintiff had safety concerns, was suicidal and was not going back into her cell. Id. at 41:4-6. Defendant Sergent told plaintiff that plaintiff did not have safety concerns, plaintiff had been cleared by "psych," and asked plaintiff to move her legs and remove her shirt. Id. at 41:7-11. Defendant Sergent then grabbed plaintiff by both ankles and attempted to throw plaintiff backwards by lifting plaintiff's legs up in an attempt to get plaintiff into the cell. Id. at 41:14-21. As defendant Sergent tried to flip plaintiff, plaintiff grabbed the door threshold to brace herself. Id. at 42:15-18. Plaintiff

pulled herself outside the cell. Id. at 43:14-18.  One of the defendants then said, "just call the code and tell them resistive inmate." Id. at 44:1-6.  After the incident, plaintiff was taken to medical. Id. at 48:20-25-49:1-10.  Nurse Yellery asked plaintiff if force was used because she saw the marks on plaintiff. Id. at 49:11-14.  Plaintiff testified that defendant Reynolds stated, "Yes, force was used." Id. at 49:14-15.  Plaintiff later learned that she was being accused of assaulting defendant Sergent. Id. at 49:19-21.  Plaintiff received a rules violation report for allegedly kicking defendant Sergent. Id. at 54:18-23.  Plaintiff was also criminally charged with battery on an officer based on her alleged kicking of defendant Sergent. Id. at 66:6-8.  In her opposition, plaintiff alleges that she was found not guilty in Amador County Superior Court of committing battery on defendant Sergent.  (ECF No. 55 at 3.)

        Turning to defendants' version of what happened when plaintiff arrived at her cell, defendants contend that plaintiff fell to the ground at the front of her cell on her own volition, with the upper half of her body in the cell and the lower half of her body outside the cell.  Gann Decl. ¶ 11 (ECF No. 44-6 at 2); Culum Decl. ¶¶ 17-16 (ECF No. 44-3 at 3); Baliton Decl. ¶¶ 9-10 (ECF No. 44-5 at 2); Sergent Decl. ¶¶ 9-10 (ECF No. 44-4 at 2).  In his declaration, defendant Culum states that defendant Gann attempted to shut the door of plaintiff's cell, but plaintiff refused to allow the cell door to be secured by keeping both of her feet outside the threshold of the cell.  Culum Decl. ¶ 18.  Defendants observed plaintiff remove her shirt and tie it around her neck.  Gann Decl. ¶ 18; Culum Decl. ¶ 22; Baliton Decl. ¶ 15; Sergent Decl. ¶ 11.  Defendant Sergent attempted to talk to plaintiff and asked plaintiff to remove the shirt from plaintiff's neck. Sergent Decl. ¶ 12; Gann Decl. ¶ 19; Baliton Decl. ¶ 16; Culum Decl. ¶ 23.  Plaintiff suddenly kicked defendant Sergent in the right knee with her left heel. Sergent Decl. ¶ 13; Gann Decl. ¶ 21; Baliton Decl. ¶ 19; Culum Decl. ¶ 24.  Defendant Sergent called a "Code 1 Building 4 resistive inmate," via her state issued radio.  Sergent Decl. ¶ 14.  In his declaration, defendant Baliton states that plaintiff was escorted out of her housing unit and taken to the clinic where medical staff evaluated plaintiff.  Baliton Decl. ¶¶ 29-30.

        Defendants deny using force against plaintiff.  In his declaration, defendant Gann denies slamming the cell door on plaintiff.  Gann Decl. ¶ 13.  Defendant Culum denies throwing plaintiff

11

into the door frame of her cell or throwing plaintiff into her cell. Culum Decl. ¶¶ 14-15. Defendant Culum states that he "never used force on plaintiff, let alone kicked, stomped on, punched or otherwise assaulted plaintiff." Culum Decl. ¶ 28. In her declaration, defendant Sergent denies using force against plaintiff, including kicking, stomping, punching or assaulting plaintiff. Sergent Decl. ¶¶ 19-20. In his declaration, defendant Baliton denies throwing plaintiff into the door frame of her cell or into her cell. Baliton Decl. ¶¶ 13-14. Defendant Baliton denies using any force on plaintiff during this incident, including kicking, stomping or punching plaintiff. Baliton Decl. ¶ 34. Defendants state that they did not witness any defendant use force against plaintiff. Baliton Decl. ¶ 35; Sergent Decl. ¶ 21; Culum Decl. ¶ 29; Gann Decl. ¶ 28.

### b. T*he Need for Application of Force*

Prison officials are entitled to use reasonable force when inmates disobey orders. See White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (defendants applied reasonable force to control inmate who refused to enter cell); Uerling v. Piccinini, 2000 WL 1377059, at *1 (9th Cir. Sept. 25, 2000) (because the plaintiff admitted that he refused to comply with orders to be handcuffed and removed from his cell, and physically resisted correctional officers attempting to remove him from his cell, the force used to extract and restrain him was not unreasonable); Manriquez v. Huchins, 2011 WL 6293962, at *3 (E.D. Cal. Dec. 15, 2011) ("An inmate's failure to comply with prison officials would create a need for the use of force to gain compliance and restore order."), report and recommendation adopted, 2012 WL 94475 (E.D. Cal. Jan. 11, 2012); Stevenson v. Harmon, 2009 WL 667198, at *15 n.9 (S.D. Cal. March 13, 2009), affirmed by, 406 F. App'x 97 (9th Cir. 2010) ("When an inmate refuses to comply with the order of a staff member, a threat may be reasonably perceived by staff.").

As discussed above, plaintiff admits that she refused defendants' orders to walk to her cell when she was in the holding cell and when she arrived at her building in the wheelchair. Although plaintiff claims that defendants did not repeat their order a third time when they arrived at plaintiff's cell, this Court finds that the record is clear that plaintiff did not intend to obey the orders to go into her cell. For this reason, this Court finds that defendants were entitled to use reasonable force when they arrived at plaintiff's cell.

In her opposition, plaintiff argues that defendants did not need to use force because they could have given her a "cautionary" move or placed her in administrative segregation pursuant to CDCR DOM § 54046.11(a) after she refused the first order to go to her cell. It is unclear what plaintiff means by "cautionary" move. Pursuant to CDCR DOM § 54046.11(a), defendants may have had the option to place plaintiff in administrative segregation after she refused the first order to go to her cell. However, this Court need not determine whether defendants had this option because, for the reasons discussed below, this Court finds that defendants fail to demonstrate that the force they allegedly used against plaintiff once they got to her cell was reasonable.

In the summary judgment motion, defendants also argue that plaintiff failed to justify any basis for her refusal to return to her cell. Defs. Mem. at 7-8 (ECF No. 44 at 7-8). Citing undisputed facts nos. 8-9, defendants contend that plaintiff did not make a formal representation of enemy concerns regarding her cellmate and plaintiff's cellmate did not pose an immediate threat of harm. Defs. Mem. at 8. These arguments are in response to plaintiff's claim that she had safety concerns regarding her cellmate. This Court finds that to the extent plaintiff claims that defendants disregarded her safety concerns regarding her cellmate, these claims conflate an Eighth Amendment failure-to-protect claim with the pending excessive force claim. Accordingly, this Court will not address the arguments raised in the briefing regarding plaintiff's safety concerns with her cellmate and whether defendants disregarded these safety concern. See White, 901 F.2d at 1503-07 (plaintiff raised both failure-to-protect and excessive force claims when jail officials allegedly attempted to force plaintiff into cell with dangerous cellmate).

*c. Relationship Between Need for Force and Amount of Force Used*

In considering the third Hudson factor, this Court refers to a case cited by defendants, Johnson v. Schneider, 2016 WL 3033691 (C.D. Cal. Apr. 21, 2016), findings and recommendations adopted, 2016 WL 3033690 (C.D. Cal. May 26, 2016). See Defs. Mem. at 8. In applying the third Hudson factor, the court in Johnson considered whether defendants "used only the amount of force necessary…" 2016 WL 3033691, at *4. In considering the third Hudson factor, this Court also acknowledges that because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the Court must be deferential to

13

the conduct of prison officials. See Whitley v. Albers, 475 U.S. 312, 321-22 (1986). However, because plaintiff claims that she was non-violent in her refusal to enter her cell, this Court cannot find that, as a matter of law, it was necessary for defendants to allegedly throw plaintiff into her cell, kick her and slam her legs with the cell door in order to get plaintiff into her cell or otherwise maintain order.[3] While plaintiff admits that she refused to walk into her cell, there appear to have been less forceful means available to get plaintiff, who allegedly did not violently resist defendants, into her cell. In other words, the alleged use of force was not proportional to the need for the use of force.

    This Court also observes that the injuries plaintiff allegedly suffered suggest that the force defendants allegedly used was not proportional to the need for the use of force. As discussed above, in the complaint and opposition, plaintiff describes her injuries as having her face smashed in and injuring her nose, pain and swelling in her face, scrapes and swelling in her right knee, an open wound on her right ankle, a bruised and swollen shoulder, and bruises on her body for months and pain for weeks. These combined alleged injuries are not slight or minor. This Court also observes that plaintiff was taken to the clinic after the incident to be evaluated by medical staff. As discussed above, at her deposition, plaintiff testified that the clinic nurse asked if force was used after seeing the marks on plaintiff. This Court reasonably infers that plaintiff was taken the clinic, at least in part, because of her alleged injuries caused by defendants' alleged use of force.

    This Court compared plaintiff's alleged injuries to a case cited by defendants in their reply where the Ninth Circuit found no excessive force based on the plaintiff suffering minor injuries, White v. Roper, 901 F.2d 1501 (9th Cir. 1990). Def. Reply at 4 (ECF No. 59 at 4). In White, the plaintiff refused to enter the cell of an inmate who the plaintiff perceived as a threat. 901 F.2d at 1502-03. The plaintiff backed away from the cell entrance and defendants used force to subdue the plaintiff. Id. at 1503. The Ninth Circuit rejected the plaintiff's claim that defendants used

---

[3] In the opposition, defendants suggest that plaintiff's deposition testimony indicates that they were trying to throw plaintiff into the cell but inadvertently caused plaintiff to hit the cell door. Whether plaintiff is entitled to damages caused by defendants' negligence may be addressed at trial.

14

excessive force to subdue the plaintiff. Id. at 1507. While the parties disputed the amount of force used, the Ninth Circuit found that the plaintiff's minor injuries demonstrated that defendants did not use excessive force. Id. Regarding plaintiff's injuries, the Ninth Circuit found that the plaintiff did not request medical treatment for his cut wrist and bruises, did not suffer a loss of consciousness and did not suffer any permanent injury. Id. In the instant case, plaintiff allegedly suffered multiple injuries, some of which plaintiff allegedly suffered from for weeks and months after the incident. In addition, as discussed above, plaintiff was taken to the clinic after the incident for, at least in part, treatment for her injuries. Plaintiff's alleged injuries support this Court's finding that the force allegedly used was not proportional to the need.[4] The other cases cited by defendants also do not support their arguments. For example, defendants cite to excessive force cases distinguishable based on the level of force used and the inmate's minimal injuries. See, e.g., Hughes v. Rodriguez, 31 F.4th 1211 (9th Cir. 2022) (use of police dog); Rodriguez v. Elmore, 407 F. App'x 124 (9th Cir. 2010) (use of pepper spray after inmates' refusal to exit cell for cell search to look for missing metal object); Hart v. Celaya, 548 F. Supp. 2d 789 (N.D. Cal. 2008) (use of pepper spray was lowest level of force); Johnson v. Schneider, 2016 WL 3033691, at *4 (C.D. Cal. Apr. 21, 2016) (use of pepper spray and physical force after inmate's refusal to exit cell for cell search where inmate sustained only slight injuries), findings and recommendations adopted, 2016 WL 3033690 (C.D. Cal. May 26, 2016).

For the reasons discussed above, this Court recommends that defendants' summary judgment motion on the merits of plaintiff's Eighth Amendment claim be denied.

**B. Qualified Immunity**

1. Legal Standard for Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223,

---

[4] In her opposition, plaintiff claims that CDCR denied her request for her medical records. Because this Court finds that plaintiff adequately describes her alleged injuries, this Court does not construe plaintiff's opposition to contain a request to defer ruling on defendants' motion pursuant to Federal Rule of Civil Procedure 56(d).

15

1  231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity
2  shields an officer from liability even if his or her action resulted from "'a mistake of law, a
3  mistake of fact, or a mistake based on mixed questions of law and fact.'"  Id. (quoting Groh v.
4  Ramirez, 540 U.S. 551, 567 (2004)).

5       "Determining whether officials are owed qualified immunity involves two inquiries:
6  (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged
7  show the official's conduct violated a constitutional right; and (2) if so, whether the right was
8  clearly established in light of the specific context of the case."  Robinson v. York, 566 F.3d 817,
9  821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  A right is "clearly
10 established" when, "at the time of the challenged conduct, the contours of a right are sufficiently
11 clear that every reasonable official would have understood that what he is doing violates that
12 right."  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S.
13 635, 640 (1987)).

14      The qualified immunity analysis is separate from the Eighth Amendment excessive force
15 analysis.  See Marquez v. Gutierrez, 322 F.3d 689, 691 (9th Cir. 2003).  Thus, an officer can do
16 an act which would violate an inmate's Eighth Amendment right but still be entitled to qualified
17 immunity if a reasonable officer in his position would have believed that his response was a good
18 faith effort to restore discipline.  Id. at 692-93.  Courts must be "hesitant 'to critique in hindsight
19 decisions necessarily made in haste, under pressure, and frequently without the luxury of a second
20 chance.'"  Id. at 692 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)).

21      2. Analysis

22      Defendants argue that they are entitled to qualified immunity based on the second prong
23 of the qualified immunity analysis, i.e., their conduct did not violate clearly established law.
24 Defs. Mem. at 8.  Defendants argue that accepting plaintiff's disputed testimony as true,
25 defendants used limited force in an effort to secure plaintiff into her cell.  Defs. Mem. at 9.  As
26 discussed above, the law provides that defendants were entitled to use reasonable when plaintiff
27 disobeyed the order to enter her cell.  This Court cannot find, however, that a reasonable officer
28 in defendants' position would believe that throwing plaintiff into her cell, kicking her and

slamming the cell door on her legs, with an amount of force to cause plaintiff's alleged injuries, when plaintiff offered no violent resistance, was a reasonable use of force. In addition, the cases cited by defendants do not support finding qualified immunity. For example, defendants cite to qualified immunity cases involving factual scenarios completely different from the underlying incident in this case. See, e.g., Mullenix v. Luna, 577 U.S. 7 (2015) (high speed car chase); Simmons v. Arnett, 47 F.4th 927 (9th Cir. 2022) (prison guard shooting from the control booth during a fight). This Court concludes that defendants are not entitled to qualified immunity.

## VI. CONCLUSION

Accordingly, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 44) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 25, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Gate1576.sj(5)/2